## Case No. 3,754.

### DELANO v. WINSOR et al.

[1 Cliff. 501.][1]

Circuit Court, D. Massachusetts. Oct. Term, 1860.

EQUITY—PLEADINGS AS EVIDENCE—SHIP-BROKERS—FRAUD AGAINST PRINCIPAL.

1. If the answer of the defendant is responsive to the bill, it is evidence in his favor, and is conclusive, unless disproved by something more than the testimony of one witness.

2. Where the complainant sought to recover damages of the respondents, because they improperly and unfaithfully executed the trust he confided to them, and the facts charged in the bill were clearly and positively denied in the answer, held, that inasmuch as the complainant failed to prove the facts charged by more than one witness, he had not overcome the denials of the answer.

[Cited in Gilman v. Libbey. Case No. 5,445; Scammon v. Cole. Id. 12,432; Voorhees v. Bonesteel, 16 Wall. (83 U. S.) 30.]

3. The respondents were employed by complainant to obtain a cargo for his vessel, and complainant alleged that respondents were employed to ship the entire cargo at specified rates, payable in money, which was denied in the answer; and after the vessel was loaded, and had departed on her voyage, the respondents sent to complainant a statement or freight list prepared as if the whole cargo had been shipped at speci-

[1] [Reported by William Henry Clifford, Esq., and here reprinted by permission.]

fied rates of freight, upon which complainant thereupon paid the agreed commissions. Held, that as a portion of the cargo was in reality shipped at half profits, the making of the freight list amounted to a misrepresentation.

This was a bill in equity wherein the complainant [Warren Delano], owner of the ship Mastiff, sought to recover damages of the respondents [Nathan Winsor, Jr., and others], as his agents, because they improperly and unfaithfully executed the trust he confided to them, as ship-brokers, to procure a cargo of freight for the vessel, and also on account of certain misrepresentations made by them in respect to the same, whereby he was induced to pay them in commissions a greater sum than they were entitled to receive. The complainant made application to the respondents to procure a cargo for his vessel while she was lying in the harbor of Boston bound for San Francisco, and agreed to pay them five per cent. on the amount of freight and primage of the goods laden on board. After the merchandise was shipped, the respondents sent to the complainant a freight list of the same, and a statement of the money to be earned in their carriage and delivery, showing freight including primage to the amount of $2,001.20, upon which the complainant paid them $1,005, besides other charges. The complainant alleged that the respondents were employed to procure the cargo at specified rates of freight, payable in money, and not on terms of half profits, and relying upon the freight list he believed the goods were to be carried for the specified rates of freight; but such was not the case, as appeared by the bill of lading signed by the respondents. According to the bill of lading a large portion of the cargo, to wit, fifty-seven tons of pig-iron, three hundred and thirty-three "nests" of tubs, so called, and seventy-five dozen pails, were shipped at "one half net profits over costs and charges," and these could not be sold at any profit, and he consequently received no compensation for them. He therefore insisted that the respondents were bound to pay him the loss he had suffered by their acts. The answer denied that the respondents were employed to procure a cargo of any particular kind or at specified rates of freight in money, and alleged that the kind of cargo and rates and terms were by the agreement left to their judgment and discretion. They also denied that they intended to represent in the statement that all of the cargo was procured and shipped at specified rates, to be paid in money, or that the statement contained any such representation.

F. C. Loring, for plaintiff.

Equity has jurisdiction, because plaintiff seeks to correct an account rendered by defendants. 1 Story, Eq. Jur. 429. Transactions between principal and agent being coupled with a trust, relief may be had in equity as well as at law. Hov. Frauds, 161,

162. Plaintiff has no remedy at law, neither in debt, covenant, assumpsit, trover, nor case. His claim is, that defendants shall make their representation good. Equity only can give this relief. In Harding v. Carter, 1 Marsh. Ins. 210, it was held that trover would lie for a policy of insurance never made. It has been doubted whether the relief should not have been sought in equity. Tickel v. Short, 2 Ves. Sr. 239, is in point. Gray v. Murray, 3 Johns. Ch. 167, same principle. Ground of action is false representation of the defendants, by reason of which they charged and received a larger commission than they otherwise would, and so are bound to make it good. Id. 185.

Ranney and Morse, for defendants.

If the plaintiff has any cause of action, he has a plain, adequate, and complete remedy at law, and a court of chancery has no jurisdiction of it. 1 Stat. 82; Baker v. Biddle [Case No. 764]; Sadler v. Robinson, 2 Stew. [Ala.] 520. It is not a case of fraud alleged or proved, nor one of trust or the violation of any trust. Russ v. Wilson, 22 Me. 207; Porter v. Spencer, 2 Johns. Ch. 170. If it is merely a case of violated contract in the shape of a warranty that the goods in question were shipped on a specific fixed rate of freight, an action at law is the clear and proper remedy. The omission to state the amount of freight on the iron, tubs, and pails as "estimated," so as to get a reasonable compensation in the shape of commissions as was customary and reasonable, was by mistake and accidental. At the worst, it was but a misrepresentation, which harmed nobody, and never would have been noticed if the goods had netted a rate of freight satisfactory in half profits. To recover the actual damages resulting from such misrepresentation would be the extent of the liability, if any. Cunningham v. Bell. [Case No. 3,479]; Bell v. Cunningham, 3 Pet. [28 U. S.] 69, 85; Greene v. Goddard. 9 Metc. [Mass.] 223; Brown v. McGran, 14 Pet. [39 U. S.] 480, 496; Blot v. Boiceau, 3 Comst. [N. Y.] 78; Gould v. Rich, 7 Metc. [Mass.] 539, 546; Frothingham v. Everton, 12 N. H. 239.

CLIFFORD, Circuit Justice. Two grounds of claim are set up by the complainant which must be separately and carefully considered. Claims so entirely distinct in their nature, although presented in the same bill of complaint, cannot be so blended together as to excuse the court from their separate examination.

Careful attention to the first claim, as stated in the bill of complaint, will show that it is for damages arising from the breach of a contract to procure a cargo of goods as freight for a certain vessel, on a given voyage, at specified rates of freight, payable in money on the transportation and delivery of the goods; and the breach alleged is, that the respondents did not perform the contract; that a portion of the cargo procured and shipped was not subject to specified rates of freight payable in money, but that the articles were procured and shipped upon terms of one half net profits over costs and charges. Allegation is not made in the bill of complaint that cargo in lieu of that shipped, subject to freight at specified rates, payable in money, and such as it is alleged the respondents undertook and agreed to procure, might have been obtained in the market, or that the failure to procure such was occasioned through the negligence or unskilfulness of the respondents; but the allegation is,—and that is the foundation of the claim,—that the respondents undertook and agreed to do what they did not and have not performed, and that the non-performance of the undertaking and agreement has occasioned loss to the complainant which the respondents are bound to make good in the manner therein described. Taking the case as stated in that part of the bill of complaint under consideration, it plainly has all the material elements of an action on the case, founded upon a special undertaking and agreement in the nature of a warranty, and the non-performance of the same, where special damages are claimed for the breach of the undertaking and agreement. Special damages are evidently claimed in this case, because the complainant alleges that the respondents are bound to make good the loss he has suffered by their doings, and pay to him the sums of money he would have received if they had performed their undertaking and agreement. Irrespective of the question of jurisdiction raised in the case, the first question to be considered is, whether the complainant has proved the special undertaking and agreement on which the suit in this behalf is founded. Unless the respondents undertook and agreed to procure and ship the cargo on the terms assumed by the complainant, there could be no such breach of contract as is alleged, and of course there can be no cause of action. Such, undoubtedly, were the views of both parties at the inception of the litigation, as is obvious from the manner in which the pleadings are drawn. Distinct allegations upon the subject are to be found both in the bill of complaint and in the answer of the respondents. Complainant alleges that the commission, agency, and trust for which he retained the respondents were to procure a cargo for the vessel, to be carried and delivered on payment of freight in money at specified rates, and not upon half profits, which leaves it clearly to be implied that the whole cargo was to be procured and shipped at specified rates. On the other hand, the respondents deny that they were retained for that purpose, or that the undertaking and agreement contemplated that all of the cargo should be procured and shipped to be carried and delivered for payment of freight in money at specified rates, and none

of it upon terms of half profits; and to make the denial more explicit, they also allege that the kind of cargo to be procured, together with the rates and terms on which the goods were to be transported, were to be left to their judgment and discretion; so that the denial is as full and explicit as it well can be made. Where the facts charged in the bill as the grounds for obtaining the decree are clearly and positively denied in the answer, and are only supported by one witness, the rule is well settled that the court will not decree against the defendant. Union Bank of Georgetown v. Geary, 5 Pet. [30 U. S.] 111; Atkinson v. Manks, 1 Cow. 703; Walton v. Hobbs, 2 Atk. 19; Pember v. Mathers, 1 Brown, Ch. 52. Where the answer of the defendant is responsive to the bill, it is evidence in his favor, and is conclusive unless disproved by more than one witness. 1 Paige, 241; Daniel v. Mitchell [Case No. 3,-562]. Two witnesses, or one witness with probable circumstances, says Marshall, C. J., in Clark's Ex'rs v. Van Riemsdyk, 9 Cranch [13 U. S.] 160, will be required to outweigh an answer asserting a fact responsively to a bill. He also states very clearly the reason for the rule, which is, that when the complainant calls upon the respondent to answer an allegation, he admits the answer, if duly filed, to be evidence, and if it is testimony, it is equal to the testimony of any other witness; and as the complainant cannot prevail if the balance of proof be not in his favor, he must have circumstances in addition to his single witness in order to turn the balance. Hughes v. Blake, 6 Wheat. [19 U. S.] 453. Satisfactory proof, even by one witness, that the respondents undertook and agreed to procure and ship the whole cargo at specific rates, payable in money, is not to be found in the record. Great reliance is placed by the complainant on the testimony of the master, but it is sufficient to say on that subject for the present, that it is not very full to the point, or very definite as to the terms of the agreement. Another witness is called by the complainant, who had the charge of the work in furnishing the ship, and was present all the time she was loading for the voyage in question, but he states expressly that he does not know anything about the terms on which the iron was taken on board, and that he had nothing to do with the rates of freight. All he can state is, that he gave no authority to ship goods at half profits, and had no knowledge that any were shipped on such terms. Opposed to this is the testimony of the clerk of the respondents, who states in very positive terms that the respondents were to take the ship, load her to the best of their ability, and do the best they could; that they had no specific instructions; that the loading of the ship was left to their judgment and discretion to load her as "all others are loaded." Testimony was introduced in respect to the circumstances under which the iron was pro-

cured and shipped, and the details of the evidence were much relied on by the respondents to support the statements of their witness; and they also introduced certain letters of the complainant, and offered those written by themselves of the same series; but it is unnecessary to enter into those details, as I am of the opinion that the complainant in this branch of the case has failed to overcome the denials of the answer filed by the respondents, especially as the allegations of the answer are supported by the positive statements of a credible witness. Reference to the freight-list was made at the argument, as tending to show the alleged undertaking and agreement, but it is evident that it cannot have much weight in that direction, because the goods had been shipped and the vessel had departed on her voyage before it was forwarded or even prepared. Evidence is entirely wanting to show, from the state of the market, that the additional freight at paying prices could have been obtained for the port of destination at specified rates, or that the respondents were guilty of any negligence, unfaithfulness, or unskillfulness in executing their trust. Adventures to that distant market were attended with great uncertainty, and mercantile information upon the subject was so imperfect that the failure of an enterprise furnished but slight evidence to impeach the judgment and discretion of those who entered upon them. Estoppel cannot be set up, as the evidence fails to show that the respondents ever undertook or were employed to procure and ship the entire cargo or the goods in question at specific rates; and the act of preparing and sending the freight-list was after the vessel had departed, and after the fact of her departure was well known to the complainant. Attention to these considerations will show that the cases Tickel v. Short, 2 Ves. Sr. 239, and Gray v. Murray, 3 Johns. Ch. 167, do not apply, even if the principle there laid down could under any circumstances be regarded as applicable to a case of this description.

Sufficient has already been remarked to explain the grounds on which the second claim rests. Part of the cargo had been procured and shipped upon the terms of one half the net profits over costs and charges. Having completed the shipment, and the vessel having departed on her voyage, the respondents forwarded the bills of lading which had been signed by themselves, and prepared the freight-list and sent it to the complainant. They prepared it as if the whole cargo had been procured and shipped at specified rates of freight, making the total amount of freight, including the primage of the goods, twenty thousand and one dollars and twenty cents. When they sent the freight-list, they also sent their account for commissions, claiming five per cent. on the whole amount set down in the statement, and the complainant, trusting to the accuracy of the represen-

tation, paid the amount claimed. Misrepresentation and mistake are both charged in the bill of complaint as the foundation of this claim. Blended as the two charges are in the bill of complaint, it is somewhat difficult to separate them, and it is that difficulty which has occasioned the only doubt in the mind of the court on this branch of the case. After full consideration, I have come to the conclusion that the allegations of the bill of complaint are sufficient to support the claim, which is substantially based in the pleadings upon mistake induced by misrepresentation. Authorities are not necessary to show that errors in the settlement of accounts between principal and agent, especially if induced by misrepresentation, are cognizable in equity. 1 Story, Eq. Jur. §§ 462–464, 524–526; Daniel v. Mitchell [supra]. All of the allegations of the bill of complaint in this branch are admitted, except the allegation of misrepresentation. Respondents in their answer admit that the freight-list was prepared as alleged, and sent to the complainant. They admit that the commissions were demanded and paid; and I am of the opinion that the statement in the freight-list, under all the circumstances of the case, amounted to misrepresentation. Undoubtedly the complainant was deceived, and was thereby induced to make payment where he would have declined to do so, if he had known the true state of the case. Small as the error is, it is, nevertheless, the right of the complainant to have the amount corrected; and inasmuch as the mistake was induced by misrepresentation, this court, sitting as a court of equity, cannot refuse to take jurisdiction of the case. Unless the amount is agreed, the cause must be referred to a master to ascertain it, and, when that is ascertained, the complainant will be entitled to a decree.